UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JASON E.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00557-SEB-TAB |
| | ) |
| MARTIN J. O'MALLEY Commissioner of the Social Security Administration, | ) ) ) |
| | ) |
| Defendant. | ) |

**ORDER OVERRULING PLAINTIFF'S OBJECTIONS**

This is an action for judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") finding Plaintiff Jason E. ("Jason E.") not entitled to Social Security disability insurance benefits or supplemental security income. This case was referred to Magistrate Judge Baker for initial consideration. On December 19, 2023, Magistrate Judge Baker issued a Report and Recommendation recommending that the Administrative Law Judge's ("ALJ") decision denying Jason E. benefits be affirmed. This cause is now before the Court on Jason E.'s Objections to the Magistrate Judge's Report and Recommendation. Dkt. 22.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## STANDARD OF REVIEW

We review the Commissioner's denial of benefits to determine whether it was supported by substantial evidence or was the result of an error of law. *Rice v. Barnhart*, 384 F.3d 363, 368–69 (7th Cir. 2004); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Our review of the ALJ's decision does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). However, the ALJ's decision must be based upon consideration of "all the relevant evidence," without ignoring probative factors. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In other words, the ALJ must "build an accurate and logical bridge" from the evidence in the record to his or her conclusion. *Dixon*, 270 F.3d at 1176. We confine the scope of our review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Tumminaro v. Astrue*, 671 F.3d 629, 632 (7th Cir. 2011).

When a party objects to specific elements of a magistrate judge's report and recommendation, the district court conducts a *de novo* review to determine for itself whether the Commissioner's decision was supported by substantial evidence or, rather, was the result of an error of law. Fed. R. Civ. P. 72(b). The district court "makes the ultimate decision to adopt, reject, or modify" the report and recommendation, and need not accept any portion as binding; the court may, however, defer to those conclusions of the report

and recommendation to which timely objections have not been raised by a party. *See Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 759–61 (7th Cir. 2009). We have followed those guidelines in conducting this review.

## BACKGROUND[2]

On December 30, 2020, Jason E. protectively applied for disability insurance benefits ("DIB") and supplemental security income, alleging a disability onset date of December 31, 2016. The agency denied Jason E.'s application initially and on reconsideration. After a hearing, the ALJ determined that Jason E. was not disabled.

In conducting the five-step sequential analysis, the ALJ found at Step One that Jason E. had not engaged in substantial gainful activity since December 31, 2016, the alleged disability onset date. At Step Two, the ALJ identified the following severe impairments: osteoarthritis, neuropathy of the lower extremities; polysubstance abuse disorder (cannabis, opiates, meth, alcohol); major depressive disorder; generalized anxiety disorder ("GAD"); posttraumatic stress disorder ("PTSD"); and personality disorder. At Step Three, the ALJ concluded that Jason E. did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 C.F.R. Part 404, Appendix I.

Before Step Four, the ALJ determined that Jason E. had the residual functional capacity ("RFC") to perform medium work, except as follows:

---

[2] The relevant evidence of record is amply set forth in the parties' briefs as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

> [The Claimant] can never climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl; can frequently reach forward and to the side, can frequently finger, handle and feel, no operations of foot controls; avoid all use of hazardous machinery and all exposure to unprotected heights; no job where driving or use of a motorized vehicle is required to perform the functions of the job; job must be able to be learned in 30 days or less; no complex or detailed written or verbal communications or decision making; limited to simple routine and repetitive tasks (that is short cycle work, where the same routine tasks are performed over and according to set procedures, sequence, or pace); no tandem tasks or teamwork; no fast paced production requirements; occasional and brief interaction with coworkers and supervisors; no direct interaction with the public to perform essential functions of job; no more than occasional routine workplace changes; he can tolerate normal supervisory interactions, including for example, performance appraisals, corrections, instructions, and directives as necessary. He can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work. He can exercise judgment in making work-related decisions commensurate with the simple routine and repetitive work described.

Dkt. 8-2 at 30.

Based on this RFC, the ALJ found, at Step Four, that Jason E. could perform past relevant work as a server and mold injection operator. Alternatively, at Step Five, the ALJ determined that Jason E. was capable of successfully adjusting to other work that exists in significant numbers in the national economy, such as laundry laborer, hand packager, small products assembler, and visual inspector checker. *Id.* at 37.

On appeal before the Magistrate Judge, Jason E. argued that the ALJ erred by: (1) failing to evaluate a medical source statement properly; (2) assessing his subjective symptoms incorrectly; and (3) finding he could perform past relevant work or alternate work based on defective hypothetical questions to the vocational expert ("VE"). Though the Magistrate Judge agreed that the administrative decision contained certain deficiencies, he ultimately concluded that the decision was supported by substantial evidence.

Accordingly, the Magistrate Judge recommended that Jason E.'s request for remand be denied. R. & R. 13, dkt. 19.

Jason E. timely objected to the Magistrate Judge's Report and Recommendation, contending that the ALJ failed to consider the medical source statement provided by Dr. Karl Evans, PsyD, HSPP ("Dr. Evans") and that the ALJ derogated from her duty to develop the administrative record fully and fairly. Jason E.'s objections are briefed and await our ruling.

## DISCUSSION

We review the ALJ's decision under the "substantial evidence" standard, asking whether a reasonable evidentiary basis supports the administrative decision. *Tonn v. Kijakazi*, No. 20-C-1491, 2022 WL 35718, at *2 (E.D. Wisc. Jan. 4, 2022) (citations omitted). This deferential standard of review "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). An ALJ must provide a "logical bridge" between the evidence and her conclusions, such that a reviewing court need not "speculate as to the basis for the RFC limitations." *Moore v. Colvin*, 743 F.3d 1118, 1128 (7th Cir. 2014); *see also Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012). Remand is necessary when the administrative "lacks either sufficient evidentiary support or an adequate discussion of the issues, is undermined by legal error, or is so poorly articulated as to prevent meaningful review." *Danielle J. O'Malley*, No. 22-cv-4145, 2024 WL 774945 (S.D. Ind. Feb. 26, 2024) (internal quotation and citation omitted).

Here, Jason E. maintains that the ALJ erred in her recitation of Dr. Evans's statement, and, as a result, the RFC limitations do not take into account his erratic behavior, impulsivity, difficulty coping with stress, panic attacks, crying spells, and regressive behavior. Relatedly, Jason E. argues that the ALJ failed to develop a full and fair record, resulting in an RFC that lacks the support of medical evidence.

## I.   Dr. Evans's Medical Source Statement

In May 2021, Jason E. submitted to a mental consultative examination (at the ALJ's request) by Dr. Evans, a state-appointed psychologist. In a five-page report, Dr. Evans recounted Jason E.'s history and subjective symptoms as well as his own observations from the in-person evaluation. The ALJ summarized Dr. Evans's report as follows:

> The claimant was coherent and had driven himself to the appointment. He was able to recall 6 digits forward and 5 backwards. He was oriented to person, year, date, time, and place. He could not report that [sic] month and incorrectly recalled the day of the week by one day. He was able to repeat three items after one trial, and he recalled one item after a five-minute delay. He was not able to recall recent news information. He was not able to recall his route to the examiner's office. He correctly recalled his high school and was able to name recent presidents. He was not able to complete serial sevens or serial threes. His intellectual functioning was noted to likely fall in the average to low average range. His fund of knowledge, attention, and abstract reasoning were assessed as intact. His mental calculation was a weakness and his short-term memory and judgment are below avenge [sic], and the examiner noted that this is likely related to his psychiatric issues and substance abuse. It was noted the claimant is able to independently care for his personal hygiene, but he noted that sometimes he forgets. His daily activities include taking his medication, television, going to appointments, getting cigarettes at the gas station, painting/coloring, and occasionally cooking. It was noted he lives alone. The examiner did noted [sic] some regressive behavior. His attention span was adequate for simple tasks, but he struggles with mental calculation and stress tolerance was poor.

Dkt. 8-2 at 33–34. The ALJ concluded her summary, stating "[t]his examiner did not provide a functional evaluation, but rather re-stated the claimant's subjective reported symptoms." *Id.*[3]

Jason E. argues that the ALJ erred because she not only failed to discuss the persuasiveness of Dr. Evans's report, but she also omitted key findings, thereby contributing to alleged deficiencies in the RFC limitations. As to the ALJ's evaluation of persuasiveness, the Magistrate Judge agreed that "the ALJ failed to articulate how—or even whether—she appraised [Dr. Evans's] opinion." R. & R. 6, dkt. 19.[4] Nevertheless, as the Magistrate Judge concluded, such error did not warrant remand because Dr. Evans's statement did "not identify any specific limitations greater than those assessed by the ALJ." *Id.* at 7. We agree with the Magistrate Judge's assessment.

In addressing Jason E.'s functional capacity and mental limitations, Dr. Evans observed that Jason E. "avoids being around other people and rarely leaves his home due to social anxiety, hypervigilance, fear of abandonment, and anhedonia." *Id.* Dr. Evans also

---

[3] The Magistrate Judge concluded, and we agree, that the ALJ's reference to Dr. Evans's restatement of Jason E.'s subjective symptoms was simply a recognition of the following statement by Dr. Evans: "This claimant reported physical limitations, and I defer to his medical evaluations regarding this." Dkt. 8-8 at 392. In other words, Dr. Evans (a psychologist) did not examine Jason E.'s physical conditions and, thus, did not speculate as to what physical limitations he might require. The ALJ, in turn, simply acknowledged that Dr. Evans's statement was of no particular significance to determining Jason E.'s physical limitations.

[4] The ALJ never characterized Dr. Evans's report as a "medical opinion," and, thus, she never considered its evidentiary weight under various factors, like supportability and consistency, as directed by 20 C.F.R. § 404.1520c(b)(2). The Commissioner argues that Dr. Evans's statement did not qualify as a "medical opinion," as defined by federal regulations, but the Magistrate Judge already rejected this *post hoc* explanation, as the ALJ never characterized Dr. Evans's statement as such. R. & R. 6, dkt. 19. Because this issue ultimately has no bearing on our holding today, we do not disturb the Magistrate Judge's findings.

noted Jason E.'s difficulty coping with stress; his experiences with panic attacks, crying spells, and regressive behavior; and his occasional experiences with hypomanic episodes that cause erratic behavior. Accordingly, Dr. Evans concluded as follows:

> **Limitations from Mental Disorders**
> **Ability to attend to a simple work routine**
> His attention span is adequate for simple tasks. He struggles with mental calculation.
>
> **Stress Tolerance/Deterioration**
> His stress tolerance is poor.

Dkt. 8-8 at 391.

Though the ALJ never provided much context for her review of Dr. Evans's findings, she did—at least minimally—reference Jason E.'s capacity for simple tasks, weakness with mental calculations, and poor stress tolerance. Dkt. 8-2 at 34. Moreover, the RFC limitations she crafted specifically limited Jason E. to simple routine and repetitive tasks, as Dr. Evans's statement suggested. As Jason E. has recognized, the ALJ provided the following job-related mental limitations:

- job must be able to be learned in 30 days or less;
- no complex or detailed written or verbal communications or decision making;
- limited to simple routine and repetitive tasks (that is short cycle work, where the same routine tasks are performed over and according to set procedures, sequence, or pace);
- no tandem tasks or teamwork;
- no fast-paced production requirements;
- occasional and brief interaction with coworkers and supervisors;
- no direct interaction with the public to perform essential functions of job;
- no more than occasional routine workplace changes;
- he can tolerate normal supervisory interactions, including for example, performance appraisals, corrections, instructions, and directives as necessary;
- he can tolerate interactions to receive instructions and for task completion of simple, routine, repetitive work; and

- he can exercise judgment in making work-related decisions commensurate with the simple routine and repetitive work described.

Pl.'s Obj. 2, dkt. 22.

Jason E. maintains that the RFC limitations fail to take into account his impulsivity, difficulty coping with stress, panic attacks, regressive behaviors, and erratic behaviors due to hypomania, arguing that, had the ALJ properly evaluated Dr. Evans's statement, she would have tailored the RFC accordingly. Dr. Evans did note his observations regarding these behaviors, and he did not specify any related limitations, nor did he elaborate on how these other behaviors would affect Jason E.'s ability to work. Thus, "[i]t is unclear what kinds of work restrictions might address" Jason E.'s behaviors because the record evidence contains none, nor has Jason E. hypothesized any. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019). Accordingly, "[w]e see no error in the ALJ's assessment; she considered all limitations supported by record evidence." *Id.* at 497.

## II.     The ALJ's Duty to Develop

Under agency regulations, claimants bear the "principal duty to submit evidence relating to the[ir] disability claim[s]." *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023) (citing 20 C.F.R. § 404.1512(a)(1)). An ALJ, on the other hand, retains a "supplemental" duty to develop a full and fair record, as disability hearings "are not adversary[ial]"—but rather inquisitorial. *Id.* at 1244–45 (internal citations omitted).

However, an ALJ's "duty is lower when a lawyer makes the claimant's case." *Id.* at 1245. In such circumstances, an ALJ "is entitled to assume that the applicant is making his strongest case for benefits." *Id.* (quoting *Ray v. Bowen*, 843 F.2d 998, 1006 (7th Cir. 1988)).

9

"[R]egardless of whether the claimant is represented by counsel, the reviewing court defers to the ALJ on the question of how much evidence must be gathered." *Id.* (citing *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal citations omitted)). As such, "unless the ALJ did not meet the regulatory requirement," a claimant will not "succeed by arguing the ALJ could have gathered more evidence." *Id.*

Here, Jason E. argues that the ALJ "did not comply with her duty to investigate the facts and develop the arguments both for and against granting benefits." Pl.'s Obj. 3, dkt. 22. We disagree. Because Jason E. was represented by counsel at the hearing, he is presumed to have made his best case to the ALJ. *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017). To that end, Jason E.'s counsel expressly affirmed that she and her client had reviewed the file and had no objections. Dkt. 8-2 at 50 (hearing transcript wherein claimant's attorney affirms having reviewed the file and stating, "We have no objections"). Based on Jason E.'s counsel's affirmation, "[t]he ALJ was entitled to conclude that additional development of the issues was unnecessary." *Bertaud*, 88 F.4th at 1246. Insofar as a gap existed in the record, "[t]he ALJ was not duty-bound to investigate" it. *Id.*

Jason E. further contends that the ALJ erred because she "explicitly chose only to listen to testimony elicited by counsel." Pl.'s Obj. 3–4, dkt. 22. Again, the ALJ was entitled to rely on Jason E.'s counsel's representation, as the claimant retains "the primary responsibility for producing medical evidence demonstrating the severity of impairments." *Bertaud*, 88 F.4th at 1245 (quoting *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448–49, 446 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c) (2000))).

Jason E. also argues that the ALJ was duty-bound to recontact Dr. Evans to seek additional evidence and clarification. This argument is meritless. The relevant regulations merely provide that the agency "*may* recontact [a] medical source." 20 C.F.R. § 404.1520b(b)(2). In other words, federal regulations confer ALJs with the discretion—not the mandate—to contact medical sources. *See Palmer v. Saul*, 779 F. App'x 394, 398 (7th Cir. 2019). We reiterate: "[T]he reviewing court defers to the ALJ on the question of how much evidence must be gathered." *Bertaud*, 88 F.4th at 1245. That the ALJ "*could* have gathered more evidence"—in and of itself—is insufficient grounds for reversal. *Nelms*, 553 F.3d at 1098 (emphasis added). The ALJ's decision here was adequately supported by the evidentiary record, and we uphold it accordingly.

## CONCLUSION

For these reasons, Jason E.'s objections to the Magistrate Judge's Report and Recommendation are **OVERRULED**. Accordingly, the Magistrate Judge's Report and Recommendation, dkt. 19, is hereby **ADOPTED**. Final judgment shall enter by separate document.

IT IS SO ORDERED.

Date:
  3/28/2024

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MARTIN J. O'MALLEY

Erin Leigh Brechtelsbauer
Social Security Administration
erin.brechtelsbauer@ssa.gov

Annette Lee Rutkowski
LAW OFFICE OF ANNETTE RUTKOWSKI LLC
Annetter@AnnetteAtty.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov